# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JAN 1 2 2017
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Jan 12, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

     Respondent,

v.

ALEXANDER ORTIZ-ABREGO,

     Petitioner.

NO. 92334-5

EN BANC

Filed    **JAN 1 2 2017**

STEPHENS, J.—Following a trial at which the jury found Alexander Ortiz-Abrego guilty on charges of child rape, the trial court held a contested competency hearing. The court determined that Ortiz-Abrego was incompetent during his trial, though various accommodations suggested by an expert who evaluated him midtrial could have helped him follow the proceedings. The court ordered a new trial. The Court of Appeals reversed, concluding that the trial court departed from the established competency standard by analyzing whether Ortiz-Abrego actually understood his trial and by injecting concepts from disability accommodations law. We hold that the trial

court did not abuse the wide discretion appropriate to competency determinations. This case is unusual in that the competency hearing took place after the trial concluded. Viewing the record in that context, the trial court's consideration of the defendant's observed behavior during trial, and its discussion of whether accommodations could have been made, do not reflect a departure from the established competency standard. Because the trial court did not abuse its discretion, we reverse the Court of Appeals and reinstate the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

In 2008, the State charged Ortiz-Abrego with two counts of child rape. Early in the proceedings, Ortiz-Abrego's assigned public defender became concerned about her client's competency: Ortiz-Abrego could not explain what a trial was and did not know why he had to appear in court. Ortiz-Abrego was also unable to relate basic biographical information, including how he met his wife and his own birth date. Even after numerous meetings, Ortiz-Abrego appeared unable to understand the trial process or the gravity of the charges. Despite facing the possibility of life in prison, Ortiz-Abrego declined a plea offer for a 15-month sentence. The case went to trial on May 10, 2010.

At trial, defense counsel, the court, and the prosecutor all expressed concerns about Ortiz-Abrego's understanding of the proceedings. The court conducted a

colloquy, with mixed results: Ortiz-Abrego correctly identified his attorney, the prosecutor, and that he could "'spend the rest of [his] life in jail.'" Clerk's Papers (CP) at 331. However, he was unable to explain what it means for a witness to testify—despite the court having explained it to him minutes before—or the significance of the State's decision to add a third charge. The court found that Ortiz-Abrego's responses met the minimal requirements for competency.

As the trial progressed, the trial judge became "increasingly concerned about whether the defendant understood what was happening." *Id.* at 333. The court called a brief recess to allow Dr. Tedd Judd, a Spanish-speaking neuropsychologist, to evaluate Ortiz-Abrego. Dr. Judd's testing, though not a formal competency evaluation, showed that Ortiz-Abrego had an IQ (intelligence quotient) of 70 (borderline mentally handicapped). Ortiz-Abrego also exhibited "concrete thinking," meaning he had difficulty thinking abstractly or hypothetically. Finally, Dr. Judd determined that Ortiz-Abrego had an auditory comprehension learning disability. As a result, Ortiz-Abrego struggled to understand verbal instructions and explanations. For example, "'[w]hen asked to write a sentence about the weather in Seattle in winter, it took about six explanations before he was able to proceed, including explaining what a sentence was.'" *Id.* at 334. Dr. Judd concluded that "'Ortiz-Abrego's borderline intelligence, concrete thinking, and auditory comprehension disability will have a substantial impact on his

ability to participate in a trial.'" *Id.* at 335. Dr. Judd's report suggested a series of accommodations to allow Ortiz-Abrego to better track the court proceedings.[1] None were requested or implemented.

The trial resumed, and the jury ultimately delivered a guilty verdict. The defense moved for arrest of judgment or a new trial on the ground that Ortiz-Abrego had not been competent to stand trial. In response, the court ordered a formal 15-day competency evaluation. Ortiz-Abrego was sent to Western State Hospital (WSH) on August 30, 2010 for the evaluation. Dr. Roman Gleyzer conducted an intake assessment and opined that Ortiz-Abrego's level of function in society was "average" despite cognitive and intellectual disabilities. Verbatim Report of Proceedings (VRP) (June 9, 2011) at 52. Dr. Ray Hendrickson also evaluated Ortiz-Abrego, diagnosing an "adjustment disorder with depressed and anxious mood with borderline intellectual functioning." *Id.* at 54. Due to difficulties in obtaining a properly certified interpreter, Ortiz-Abrego then returned to jail to await his formal competency evaluation.

On October 14, 2010, WSH's Dr. George Nelson performed the full competency evaluation. Ortiz-Abrego's performance had degraded noticeably since the midtrial

---

[1] The suggested accommodations included frequent breaks, simple summaries in Spanish, and quizzes to check comprehension of the proceedings. CP at 118. Ortiz-Abrego is a native Spanish speaker with a sixth grade education, and appears to have received a certified interpreter during court proceedings and formal evaluations. *See, e.g.*, Verbatim Report of Proceedings (June 8, 2011) at 5.

-4-

*State v. Ortiz-Abrego*, 92334-5

evaluation by Dr. Judd. Dr. Nelson found Ortiz-Abrego to be incompetent. Dr. Nelson suggested medication and a period of commitment to treat Ortiz-Abrego's acute emotional distress. The court ordered Ortiz-Abrego returned to WSH for 90 days of "competency restoration classes." CP at 340.

At the end of this period, Dr. Hendrickson and postdoctoral fellow Dr. Amber Simpler conducted Ortiz-Abrego's final competency evaluation. Ortiz-Abrego was largely nonresponsive, professing that he either did not know or could not remember the answers to most questions. In his final report, Dr. Hendrickson stated that he did not have enough information to determine Ortiz-Abrego's competency. Although Dr. Hendrickson suspected that Ortiz-Abrego was exaggerating his symptoms, none of the WSH doctors tested Ortiz-Abrego for malingering.[2]

Beginning on April 6, 2011, the trial court held a multiday, contested competency hearing. The court heard testimony from Dr. Judd, Ortiz-Abrego's former defense attorney Anna Samuels, and the three WSH doctors. The State's experts opined that Ortiz-Abrego was competent, largely based on the evidence of malingering. Dr. Judd testified that Ortiz-Abrego, whose attempts at dissembling had been unsophisticated and childlike, remained legally incompetent. After

---

[2] The State alleged malingering, and Dr. Judd's examination on April 22, 2011 revealed that Ortiz-Abrego was not demonstrating his true abilities. Suppl. Br. of Resp't at 11; VRP (June 8, 2011) at 136, 138-39.

-5-

weighing the evidence, Judge Susan Craighead determined that Ortiz-Abrego "was not competent to stand the trial we gave him" and granted the defense motion for a new trial. *Id.* at 347.

The State appealed, and the Court of Appeals reversed, holding that the trial court applied the wrong legal standard by inappropriately considering Ortiz-Abrego's actual understanding at trial and by relying on accommodations law to make a competency determination. *State v. Ortiz-Abrego*, No. 67894-9-1, slip op. at 8-9 (Wash. Ct. App. Aug. 17, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/678949.pdf. Meanwhile, pursuant to RCW 10.77.086(3), the State commenced a separate jury trial to adjudicate competency. The jury in that trial found Ortiz-Abrego competent to stand trial, and the defense appealed. The cases were linked on appeal, though Division One's opinion in this case does not reference the competency trial appeal. *See id.* at 1-10. This court accepted review of the postverdict competency hearing only. *State v. Ortiz-Abrego*, 185 Wn.2d 1009, 367 P.3d 1084 (2015).

## ANALYSIS

The State argues that the trial court applied the wrong competency standard by considering both Ortiz-Abrego's actual understanding of his trial and the absence of disability accommodations. We disagree. It is appropriate for courts to weigh evidence of actual understanding because capacity may be inferred from observed performance.

-6-

Courts may also accommodate the particular needs of a defendant by modifying trial schedules and day-to-day courtroom procedures in order to make the proceedings more accessible to a party. Such accommodations, when appropriate, are permissible exercises of judicial discretion—but are distinct from the legal analysis of competency to stand trial.

We review a trial court's competency determination for abuse of discretion. *See, e.g., State v. Ortiz,* 104 Wn.2d 479, 482, 706 P.2d 1069 (1985) (noting trial court's "wide discretion" in competency determinations). A court abuses its discretion only when an "'order is manifestly unreasonable or based on untenable grounds.'" *In re Pers. Restraint of Rhome,* 172 Wn.2d 654, 668, 260 P.3d 874 (2011) (internal quotation marks omitted) (quoting *State v. Rafay,* 167 Wn.2d 644, 655, 222 P.3d 86 (2009)). A discretionary decision is "manifestly unreasonable" or "based on untenable grounds" if it results from applying the wrong legal standard or is unsupported by the record. *Id.*

A.    Due Process Protects Incompetent Defendants from Trial or Conviction

An accused person has a fundamental right not to stand trial unless legally competent. *State v. Wicklund,* 96 Wn.2d 798, 800, 638 P.2d 1241 (1982) (citing *Drope v. Missouri,* 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)). This right is guaranteed by the due process clause of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV; *State v. Coley,* 180 Wn.2d 543, 551, 326 P.3d 702 (2014). In 1973,

-7-

Washington codified this right providing that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050.

The United States Supreme Court established the federal test for competency in *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Under *Dusky*, a defendant is competent if he has the "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'" *Id.* at 402. In *Drope*, the Court equated "ability" with "capacity," holding that a defendant is incompetent under *Dusky* if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." 420 U.S. at 171; *see also Godinez v. Moran*, 509 U.S. 389, 402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) ("Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel."). Washington competency law has adopted—and further developed—this capacity-based standard.

Washington's competency law leaves the language of *Dusky* largely unchanged: a defendant is incompetent if he or she "lacks the capacity to understand the nature of the proceedings . . . or to assist in his or her own defense as a result of mental disease

-8-

or defect." RCW 10.77.010(15). The legislature has added a series of procedural protections intended to increase consistency of competency evaluations in our state's courts.[3] These procedural safeguards make Washington's competency standard moderately more protective than the federal formulation.

Additionally, Washington courts have compiled a list of "competency factors" that the finder of fact is encouraged to consider. In *State v. Dodd*, this court noted that the "trial judge may make his determination from many things, including the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." 70 Wn.2d 513, 514, 424 P.2d 302 (1967). The guiding principle is to allow the trial court wide discretion to consider the evidence that best illuminates whether the defendant has the mental capacity to make the "sum total of decisions that a defendant may be called upon to make during the course of a trial." *Godinez*, 509 U.S. at 398.

The question in this case is whether the trial court correctly applied this capacity-based standard, or instead departed from it by considering Ortiz-Abrego's actual understanding of his trial and by blending competency and disability accommodation law.

---

[3] For example, commitments are not to exceed the maximum penal sentence for the offense and defendants are entitled to have attorneys present during any evaluation authorized by the statute. RCW 10.77.025, .020.

B. The Trial Court Applied the Correct Legal Standard

The State argues that the trial court departed from Washington's capacity-based standard by considering whether Ortiz-Abrego actually understood his trial. Suppl. Br. of Resp't at 24-25. The State further argues that the court created a "hybrid" standard by incorporating disability law into its competency determination. *Id.* at 15, 24. Considering the entire record in context, we conclude that the trial court properly considered the relevant factors and acted within its wide discretion.

*(1) The Trial Court Did Not Apply a Heightened Competency Standard*

To be competent, a Washington defendant must have the capacity to (1) understand the proceedings and (2) assist in his own defense. RCW 10.77.010(15). Here, the trial court found that Ortiz-Abrego was incompetent at the time of his trial. CP at 347. It entered the following conclusions of law (CL):

> 2. . . . [T]he defendant was unable to understand the trial process, the testimony of witnesses, and argument as a result of the combination of his borderline intellectual functioning and his auditory processing disability. Therefore, I find he lacked the capacity to assist his attorney in the absence of the accommodations outlined by Dr. Judd. . . .
> 3. I find by a preponderance of the evidence that the defendant was not competent to stand the trial we gave him, because he was not capable of *properly understanding the nature of the trial proceeding* or rationally assisting his legal counsel.

*Id.* at 346-47 (emphasis added). The State interprets the italicized phrase as "substantially rais[ing] the bar of competency" by "[r]equiring some (indeterminate) showing of *actual* understanding." Suppl. Br. of Resp't at 25. The Court of Appeals

-10-

agreed, holding that Washington law "does not require proof that a defendant has an actual or a 'proper' understanding" of the trial process. *Ortiz-Abrego*, slip op. at 8. The trial court's conclusions, however, imposed no such requirement.

Instead, the trial court correctly applied the capacity-based standard. The court found Ortiz-Abrego to be incompetent because he was "not *capable*" of understanding the nature of his trial. CP at 347 (emphasis added). This tracks Washington's statutory requirement that a defendant must have the capacity to understand the "proceedings." RCW 10.77.010(15). The court's conclusion that Ortiz-Abrego was "not capable" of understanding allows CL 3 to be read naturally alongside CL 2, which also tracks the capacity test. *See* CP at 346-47 (finding that the defendant was "unable" to understand the trial process, testimony, and arguments). The State does not explain how we can reasonably read the trial court's ruling as using the correct standard in one paragraph but not the next.

The State's misunderstanding may be due to the more detailed language in the trial court's extensive findings of fact (FF). These findings discuss Ortiz-Abrego's actual level of understanding: for example, the court notes that the defendant did not know his own birth date (FF 9), and states that he "simply did not appreciate what was going on in the courtroom" (FF 55). *Id.* at 329, 346. However, there is an important distinction between *considering* evidence of actual understanding and *requiring* proof

-11-

of actual understanding to support a finding of competence. The former is an appropriate exercise of judicial discretion; the latter would be a departure from Washington's competency standard.

A more commonsense reading of the trial court's findings shows that the court was aware of this distinction, and was careful to separate factual observations from the legal standard. After noting the defendant's difficulty recalling his own biographical details, the court explained, "[I]n and of itself, the defendant's [memory] difficulty . . . does <u>not</u> make the defendant incompetent; what is relevant is the extent to which these observations are consistent with Dr. Judd's evaluation and the evaluations of the WSH experts." *Id.* at 329. In other words, the court used this evidence to aid it in weighing the relative credibility of expert testimony—not as its basis for finding Ortiz-Abrego incompetent.

The State argues that trial courts cannot consider evidence of actual understanding because "[e]vidence that a defendant understood elements of the trial is evidence that he had the capacity to understand, but the converse is not necessarily true." Suppl. Br. of Resp't at 25. The State notes that a lack of understanding could instead indicate inattentiveness or malingering. *Id.* This argument may be a valid critique of the *reliability* of such evidence, but it does not follow that the evidence should be categorically excluded from competency determinations. Even assuming it

-12-

is actually possible for a judge to "ignore her own observations of the trial,"[4] the State's approach would encroach on the trial court's discretion. *See, e.g., Ortiz*, 104 Wn.2d at 482 (noting the broad discretion of trial courts to conduct competency determinations).

Furthermore, the State's argument appears to rest on an overly narrow interpretation of the *Dusky* standard, as discussed above. Yes, a defendant may be found competent in the absence of demonstrated understanding. *See, e.g., Godinez*, 509 U.S. at 402. But this does not mean that a trial court must simply ignore relevant evidence.[5] Evidence that a defendant either did or did not understand his trial is best understood as valid circumstantial evidence that may be considered in a court's competency analysis. *See, e.g., Dodd*, 70 Wn.2d at 514 (noting that trial courts consider a broad range of factors to determine competency). We decline to limit the ability of trial courts to make this inference.

*(2) The Trial Court's Discussion of Possible Accommodations Did Not Alter Its Application of The Underlying Legal Test*

This case is unusual in that the contested hearing to determine if Ortiz-Abrego was competent to stand trial occurred after the trial itself. With the benefit of having observed the proceedings, the trial court found that Ortiz-Abrego was unable to

---

[4] Suppl. Br. of Pet'r at 19.

[5] As Ortiz-Abrego argues, "To suggest a demonstrated lack of understanding cannot support a finding of incompetency is to suggest a prediction of ability must trump observed inability." Suppl. Br. of Pet'r at 19.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

understand his trial "in the absence of the accommodations outlined by Dr. Judd." CP at 347. In essence, the court found that Ortiz-Abrego was incompetent during the trial he received, but had things been done differently, he could have been competent under the right circumstances. *Id.*; *see also* VRP (Aug. 11, 2011) at 24 (noting that "chang[ing] how we do a trial" might restore Ortiz-Abrego to competence more effectively than committing him to WSH). The court noted that Dr. Judd's evaluation identified Ortiz-Abrego's particular learning disability—an auditory comprehension disorder—as one of the key barriers to his ability to understand the trial as it unfolded. *See* CP at 335 ("'Mr. Ortiz-Abrego's . . . auditory comprehension disability will have a substantial impact on his ability to participate in a trial.'"). None of the several accommodations Dr. Judd suggested were implemented at trial. *Id.* at 336. Looking back at the events that unfolded, the judge concluded that Ortiz-Abrego was incompetent "to stand the trial we gave him." *Id.* at 347.

The Court of Appeals criticizes the trial court for "'design[ing] a way of conducting a trial'" to render the defendant competent, suggesting this improperly blends competency and disability accommodation law. *Ortiz-Abrego*, slip op. at 9. But, the trial court's use of the word "accommodation" to describe ways that Ortiz-Abrego's competency could have been assured at trial, without more, does not demonstrate that the court applied the wrong competency standard. The court did not hold that any

-14-

defendant who shares Ortiz-Abrego's disability is incompetent to stand trial in the absence of accommodations. *See* CP at 346-47. Instead, the trial judge—looking back—concluded that the defendant she observed in the trial she conducted was in fact incompetent during the proceedings. *Id.* at 347. The State's argument that the trial court transformed "discretionary accommodations into a constitutional mandate" is an overbroad construction of the court's fact-specific holding. Suppl. Br. of Resp't at 26.

The trial court was not prohibited from considering whether the trial could have been conducted differently. To be clear, a criminal defendant's competence to stand trial and the need for disability accommodations at that trial are distinct, if at times overlapping, concerns. While a mentally incompetent defendant may also be disabled, the presence of a disability does not automatically trigger a competency evaluation. For example, a trial court might be concerned that a defendant with sight, hearing, mobility, or other challenges cannot have a fair trial in the absence of accommodations, but the court would not refer that defendant for a competency evaluation. Given the unique posture of this case, in which the court retroactively examined Ortiz-Abrego's competency after a completed trial, the distinction between accommodations and competency may seem blurred in the trial court's findings. Nevertheless, the language used in the court's CL demonstrate that the trial court kept the *Dusky* standard firmly in mind. *See* CP at 346-47. The court applied the correct competency test to determine

that Ortiz-Abrego was "not competent to stand the trial we gave him" because he "lacked the capacity to assist his attorney" and "was not capable of properly understanding the nature of the trial proceeding." *Id.* at 347. The court's discussion of Dr. Judd's proposed accommodations—none of which were implemented—was not integral to the competency determination, and may have simply reflected the court's post hoc evaluation of how things could have been done differently. Insofar as the competency standard is concerned, this discussion may be regarded as surplusage.[6] We hold that the trial court did not abuse its discretion by discussing due process concerns beyond the baseline requirement of competency when, in the ultimate analysis, the court applied the correct *Dusky* standard.

(C)    The Trial Court's Determination That Ortiz-Abrego Was Incompetent at Trial Is Reasonably Supported by the Record

The State also challenges the trial court's determination of incompetence as unsupported by the record. Suppl. Br. of Resp't at 18-23; *see also Rhome*, 172 Wn.2d at 668 (a discretionary decision is "'manifestly unreasonable'" if it is unsupported by the record) (internal quotation marks omitted) (quoting *Rafay*, 167 Wn.2d at 655)). On

---

[6] We need not identify the threshold at which due process might require accommodations for a defendant's disability. That is not at issue here. As the Court of Appeals acknowledged, *discretionary* accommodations of the type proposed by Dr. Judd fall within the trial court's authority. *Ortiz-Abrego*, slip op. at 8-9 ("the trial court has discretion to accommodate a defendant with cognitive difficulties").

-16-

this record, we conclude that the evidence reasonably supports the trial court's determination that Ortiz-Abrego was legally incompetent at the time of his trial.

By nature, competency determinations are unique to each defendant. *See, e.g.,* *State v. Sisouvanh*, 175 Wn.2d 607, 622, 290 P.3d 942 (2012) (noting that "no rule of general applicability" can effectively govern assessments of competency evaluations). They are also unique in that the task of the trial judge is not to measure overall mental capability but rather the specific mental capacity required to understand a trial. *See* *Dusky*, 362 U.S. at 402. The *Dusky* standard requires an understanding of the proceedings because without it, a defendant lacks the capacity to assist in his own defense and lacks the "ability to make necessary decisions at trial." *State v. Jones*, 99 Wn.2d 735, 746, 664 P.2d 1216 (1983); *Godinez*, 509 U.S. at 397 (noting the defendant should have the "capacity for 'reasoned choice' among the alternatives available to him"). Trial courts should focus on whether the defendant possesses the "particular level of mental functioning" that makes possible "'a reasonable degree of rational understanding.'" *Godinez*, 509 U.S. at 404. IQ is not the end of the inquiry. Trial courts should consider the specific mental qualities that impact the defendant's capacity to understand a trial, including any relevant disability.

In this context, Ortiz-Abrego's measured IQ of 70 (CP at 128), his inability to recall his own birth date (*id.* at 329), and the fact that he did not know what a sentence

was (*id.* at 334) are all causes for concern—but not definitive proof of incompetence. Appropriately, the trial court also considered Ortiz-Abrego's specific mental limitations relevant to his capacity to understand the trial proceedings.

Dr. Judd's evaluation report showed that Ortiz-Abrego exhibited markedly concrete thinking, reflecting a limited capacity to engage in abstract thought or hypothetical reasoning. *Id.* at 118. As Dr. Judd explained, if a witness told the jury Ortiz-Abrego had been in place A when in reality he had been in place B, Ortiz-Abrego could not process the disconnect between the testimony and his concrete reality. VRP (June 8, 2011) at 125-26. The trial court recognized the significance of Ortiz-Abrego's cognitive limitations. He would be unable to imagine that a jury might believe the witness and thus be incapable of responding logically or strategically to that possibility. CP at 335. A defendant who struggles with abstract thought is also likely to have difficulty making decisions such as evaluating a plea offer or understanding the impact of additional charges on the potential length of his sentence. *Id.* at 331-33 (noting Ortiz-Abrego's problems with these tasks). The record here contained substantial evidence that concrete thinking detrimentally impacted the defendant's "ability to make necessary decisions at trial." *Jones,* 99 Wn.2d at 746; *see, e.g.,* CP at 332.

Furthermore, Ortiz-Abrego's auditory comprehension disability cast serious doubt on his capacity to understand trial proceedings. As the *Godinez* Court noted,

-18-

"[T]he crucial component of the [*Dusky*] inquiry is the defendant's possession of 'a reasonable degree of rational understanding.'" 509 U.S. at 404. The trial court concluded from the testimony that Ortiz-Abrego's limited capacity to understand verbal instructions and explanations would inhibit his ability to understand the proceedings. CP at 335 ("'Most notably, [Ortiz-Abrego] will have great difficulty in tracking, understanding, and remembering the proceedings. He will do worst with rapid speech, abstract concepts, and unfamiliar material.'").

The FF show that the trial court carefully considered the testimony and also weighed evidence contrary to its ruling. In particular, the court noted evidence that Ortiz-Abrego eventually began to exaggerate his limitations (i.e., malinger), demonstrating that he is capable of at least some abstract thought. *Id.* at 346. However, the State's argument—that "[d]eliberate malingering . . . inherently contradicts any claim that a defendant is not competent"—goes too far. Suppl. Br. of Resp't at 25. The act of malingering may be evidence in favor of finding competence, but it does not prove the defendant in fact has the capacity to understand his trial and assist in his defense. The trial court correctly recognized that malingering and incompetency are not mutually exclusive: "[T]he defendant has been exaggerating his lack of understanding since at least the fall of 2010, but I am not persuaded that this exaggeration is sufficiently sophisticated to undermine the results of Dr. Judd's

evaluation or the observations of Ms. Samuel and the Court." CP at 346. It appears that the State's argument outstrips even the support of its own experts, who were careful to note that Ortiz-Abrego's apparent malingering "does *not* mean that Mr. Ortiz-Abrego has no cognitive impairments." *Id.* at 153 (WSH Forensic Mental Health Report (Feb. 24, 2011)).

The trial court also appropriately weighed the relative credibility of expert testimony and evidence. Of the four experts who testified, "the Court found Dr. Judd to be the most credible." *Id.* at 345. Dr. Judd was the "foremost expert in Washington on Spanish-speaking neuropsychological testing" and had experience conducting culturally appropriate evaluations of Latino/a defendants. *Id.* at 330, 334 (noting the importance of developing rapport through "'personalismo,'" or small talk). By contrast, none of the State's experts spoke Spanish—their reports were based on analyzing the responses of various interpreters and were thus potentially less reliable. *See, e.g., id.* at 341 ("It is apparent that the defendant struggled with the dynamic of being questioned through an interpreter"). Moreover, WSH doctors made no attempt to evaluate Ortiz-Abrego in a culturally appropriate fashion: Ortiz-Abrego's formal competency evaluation was a "two hour interrogation" adopting the "opposite [approach] to the one Dr. Judd would have recommended." *Id.* This is concerning because in *Sisouvanh*, this court explicitly addressed the need for culturally appropriate competency evaluations.

-20-

175 Wn.2d at 624-25 ("[A] trial court could not properly accept the competency evaluation of an appointed expert who . . . failed to reasonably account for the need for cultural competency in his or her evaluation."). Accordingly, the trial court reasonably gave greater weight to Dr. Judd's report.

In summary, the record contains sufficient evidence to support the trial court's conclusion that Ortiz-Abrego was incompetent at the time of his trial. While evidence of later malingering suggested a level of competence, the weight of the evidence in this case—including the testimony of the most qualified expert, the nature of Ortiz-Abrego's disability, and the trial court's own observations—supports the trial court's finding of incompetence.

## CONCLUSION

Vested with wide discretion, a trial court may consider a defendant's actual understanding (or lack thereof) in determining whether the defendant has the requisite capacity to stand trial. The trial court's discussion of possible disability accommodations, which were never implemented in this case, did not alter the legal competency standard applied. The trial court carefully weighed the evidence for and against a finding of incompetence, including evidence that Ortiz-Abrego was malingering. Supported by observations during trial and the testimony of a credible expert witness, the trial court reasonably determined that Ortiz-Abrego was

-21-

incompetent during his trial. This determination was properly grounded in Washington's capacity-based competency standard. We reverse the Court of Appeals and reinstate the trial court's ruling.

_____
Stephens, J.

WE CONCUR:

_____                    _____
                                                    Wiggins, J.

_____                    _____
Johnson, J.

_____                    _____
Owens, J.                                           González, J.

*State v. Ortiz-Abrego (Alexander)*

No. 92334-5

MADSEN, J. (dissenting)—The majority correctly articulates the competency standard and emphasizes that an inquiry into competence is distinct from an inquiry into disability accommodations. Nonetheless, the majority concludes that the trial court did not blend these two inquiries. I respectfully disagree. In this case, the trial court erroneously evaluated Alexander Ortiz-Abrego's competency and need for disability accommodations as one and the same. To be sure, our courts must ensure both that a defendant is competent to stand trial and that he has the necessary accommodations to allow him to exercise his constitutional rights, but these are two separate legal inquiries. Because the trial court blended the two inquiries together, it applied the wrong standard for competency and thus abused its discretion.

We review a trial court's competency decision for an abuse of discretion. *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012). Although this wide discretion permits a trial court to operate within a range of acceptable choices, the reviewing court retains authority to "clarify and refine the outer bounds of the trial court's available range

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of choices, and, in particular, to identify appropriate legal standards." *Id.* We review de novo whether a court applied the correct legal standard, and when a court applies an erroneous legal standard, it abuses its discretion as a matter of law. *Id.*

As the majority explains, the due process clause of the Fourteenth Amendment guarantees a fundamental right not to stand trial unless one is legally competent. *State v. Wicklund*, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982) (citing *Drope v. Missouri*, 420 U.S. 162, 172, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)); U.S. CONST. amend. XIV. In Washington, a person is competent to stand trial if he or she has the capacity to understand the nature of the proceedings and assist in his or her defense. *Ortiz*, 104 Wn.2d at 482 (citing RCW 10.77.010(6), .050). "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).

Disability accommodations, on the other hand, are not aimed at a defendant's *capacity* to understand. Rather, accommodations serve to safeguard a defendant's rights under the Sixth Amendment to confront witnesses and be present during trial and preserve a defendant's equal protection rights under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213. *See State v. Gonzalez-Morales*, 138 Wn.2d 374, 379, 979 P.2d 826 (1999) (citing U.S. CONST. amend. VI); 42 U.S.C. § 12101(b)(4) (Congress invoking its power to enforce the Fourteenth Amendment to address discrimination against persons with disabilities through the ADA). As to the Sixth

2

Amendment right, one federal court has explained, "[T]he Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation." *United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014) (concerning hearing impairments). But even then, "the Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings. Perfect participation by a criminal defendant is optimal, but perfection is not required by the Sixth Amendment." *Id.* (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984)).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State and local courts are public entities under the ADA. *See* 42 U.S.C. § 12131(1). If a person with a qualifying disability requests an accommodation, a public entity must provide it unless it will fundamentally alter the nature of the service or create an undue financial or administrative burden on the public entity. 28 C.F.R. §§ 35.150(a)(3), 35.164.

In this case, the trial court used neither the Sixth Amendment nor the ADA to address the proposed accommodations for Ortiz-Abrego's learning disability. Instead, it blended its concerns about disability accommodations into its competency evaluation. By erroneously blending these legal inquiries, the trial court necessarily abused its

3

No. 92334-5
Madsen, J., dissenting

discretion. Further, we must emphasize that not only are these separate legal inquiries, but keeping them separate ensures that defendants with disabilities are accorded their rights under the Sixth Amendment and the ADA and treated with respect in our judicial system.

The majority recognizes that a defendant's competence to stand trial and the need for disability accommodations at trial are distinct. But it reasons that the trial court's discussion of the proposed accommodations were not "integral" to its finding of incompetence, so such discussion was simply surplus. Majority at 16. The trial court's conclusions of law, however, demonstrate that we cannot separate the discussion of accommodations from the court's conclusion of incompetency:

1. I find by the preponderance of the evidence that at the time of trial, the defendant understood the charges made against him. I have significant doubts about the defendant's ability to appreciate his peril, but I cannot make the finding that he lacks this ability because it is possible that a more skilled attorney *utilizing the type of accommodations suggested by Dr. Judd* could have helped the defendant understand this.

2. However, *because none of the accommodations Dr. Judd suggested were made*, I find by a preponderance of the evidence that the defendant was unable to understand the trial process, the testimony of witnesses, and argument as a result of the combination of his borderline intellectual functioning and his auditory processing disability. Therefore, I find that he lacked the capacity to assist his attorney *in the absence of the accommodations outlined by Dr. Judd*, as set forth in Exhibit 4.

3. I find by a preponderance of the evidence that the defendant was not competent to stand the trial we gave him, because he was not capable of properly understanding the nature of the trial proceeding or rationally assisting his legal counsel in the defense of his cause.

4. I find that the defendant is not competent to be sentenced because *even if the Court were to adopt the accommodations recommended by Dr. Judd*, he did not understand the proceeding that lead to his conviction.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Clerk's Papers at 346-47 (emphasis added). Three of the four conclusions of law explicitly gave the lack of accommodations as the reason for the court's competency decision. I cannot read these conclusions and find, as the majority does, that the lack of accommodations was not integral to the court's decision. Instead, these conclusions demonstrate that the trial court—motivated by concerns about Ortiz-Abrego's learning disability—erroneously relied on competency to address its concerns.

Rather than focusing on capacity to understand and assist, as is required under a competency analysis, the trial court found that looking back, accommodations would have increased Ortiz-Abrego's ability to "properly" understand and "rationally" assist his legal counsel. This again evidences that the trial court did not apply the traditional competency standard. In evaluating competency, the question is not whether a defendant has a *proper* understanding or can *rationally* assist counsel; the question instead modestly asks whether that defendant has the bare capacity to understand and assist. *See Godinez*, 509 U.S. at 402. Under the ADA and the Sixth Amendment, it may be well within the trial court's discretion to provide accommodations that allow a defendant a higher level of understanding and participation—and we should encourage trial courts to conduct these inquiries. But trial courts must use those legal avenues, rather than heightening the modest aim of competency to meet those same needs.

I do not intend to discount the concerns that the trial court had for Ortiz-Abrego and preserving his rights. Instead, my focus is on the vehicle by which the court addressed those concerns: the competency standard. Perhaps under the Sixth

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Amendment or ADA, accommodations would have aided Ortiz-Abrego in having a fairer trial. But that does not mean he was incompetent under our current standards. It is, in fact, of questionable utility to a defendant with a disability for a court to apply a competency standard to disability. *See* Keri K. Gould, *And Equal Protection for All...The Americans with Disabilities Act in the Courtroom*, 8 J.L. & HEALTH 123, 142-45 (1993-1994). A defendant with a disability may unnecessarily be declared incompetent and confined to a psychiatric center until found competent—a diagnosis that may never materialize—when accommodations, rather than competency restoration, would have helped preserve that defendant's right to a fair and speedy trial. *Id.* at 144-45.

I am also concerned about the harmful, systemic effect that utilizing competency to address the needs of defendants with disabilities may have in our judicial system. We do not want to make the statement that defendants with disabilities do not have the *capacity* to understand and assist. Rather, we must examine how, in line with the ADA, we can structure court proceedings to allow for the maximum participation and fairness to defendants, jurors, and community members with disabilities. In looking at the trial court's decision below, this appears to be consistent with what it intended. In a proceeding to consider how to "restore" Ortiz-Abrego's competency, the court opined that it could perhaps create circumstances where Ortiz-Abrego would be competent: "Unlike a lot of situations, we may not be in a situation of changing the defendant; we may be in a situation of changing us." Report of Proceedings (Aug. 11, 2011) at 13-14;

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*see also id.* at 22 ("he was not competent to stand the trial we gave him"), 23 ("we are going to have to examine how we could design a trial for which he could be competent to stand"), 25 ("[m]y concern is that restoration is assuming that we can change the defendant when we have evidence before the court that we . . . could change how we do trial"). This is just further evidence that the trial court blended its concerns about disability accommodations into its evaluation of Ortiz-Abrego's competence when it should have evaluated the two separately under the distinct legal principles.

A review of the record in this case leaves no doubt that the trial court thoughtfully considered a variety of factors and strove to give Ortiz-Abrego a fair trial. And determining optimal accommodations for a wide variety of learning disabilities would be within a trial court's discretion and could be necessary to preserve a defendant's rights under the ADA and the Sixth Amendment. But the absence of such accommodations cannot be the reason a defendant is incompetent to stand trial because the accommodations do not address whether he has the capacity to understand and assist. Because the trial court in this case blended its consideration of disability accommodations with the question of competence, it applied the wrong legal standard. We must therefore hold that it abused its discretion.

Accordingly, I respectfully dissent.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 92334-5
Madsen, J., dissenting

Madsen, J.

Fairhurst, C.J.

Yu, J

González, J.

8