# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76311-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| WILLIAM HENRY BRANDT, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 13, 2018 |
| | ) | |

BECKER, J. — When there is reason to doubt a defendant's competency to stand trial, a trial court must obtain a professional evaluation of the defendant's mental condition. Here, the appellant—convicted of residential burglary after a short trial in which he represented himself—contends the court committed error by failing to recognize there was reason to doubt his competency. Because the threshold issue of whether there is a reason to doubt the defendant's competency has not yet been considered at the trial court level, we postpone our decision on appellant's request to reverse his conviction, and instead remand for a hearing.

## FACTS

On October 1, 2016, a Lynnwood homeowner called 9-1-1 to report that an older person who appeared to be lost and disoriented was sitting in her back yard. It was appellant William Brandt. The homeowner called again when Brandt began trying to break through a glass door with a rock.

When a deputy arrived, Brandt walked up to him and asked to be arrested for violating a protective order. Deputies learned that until very recently, the home had been owned and occupied by Brandt's daughter. A five-year no-contact order was in place, prohibiting Brandt from having any contact with his daughter. Brandt has previously been convicted of violating the order; indeed, he had recently been released from custody and was still wearing an inmate bracelet when he was arrested outside the Lynnwood home. The State charged Brandt with attempted residential burglary for attempting to enter what he thought was his daughter's home, in violation of the no-contact order.

According to the bail request accompanying the affidavit of probable cause, Brandt, who was born in 1947, has previous felony and misdemeanor convictions for possessing explosive devices, stemming from crimes he committed as a violent war protestor in the Bay Area in the early 1970s. His activities are documented in People v. Yoshimura, 91 Cal. App. 3d 609, 614-19, 154 Cal. Rptr. 314 (Ct. App. 1979) (reviewing the criminal acts of Brandt and one of his co-defendants in a notorious case). Brandt also has a Washington felony conviction for intimidating a Shoreline District Court judge in 1998. A threatening letter from Brandt to the Shoreline judge came after a barrage of conspiracy theory lawsuits that Brandt carried on pro se, arising from a private fee dispute over medical services in 1995. See State v. Brandt, 103 Wn. App. 1026 (2000); see also Brandt v. Easton, 85 Wn. App. 1035 (after dismissal of misdemeanor charges of malicious mischief and trespass, Brandt unsuccessfully sued district

court clerks for negligence and conspiracy), review denied, 133 Wn.2d 1005 (1997).[1]

In this case, Brandt was arraigned on October 18, 2016. A public defender was present but did not represent Brandt, who had requested to proceed pro se. Brandt has represented himself many times in previous litigation. Brandt pleaded not guilty.

At an omnibus hearing on November 2, 2016, the court conducted a colloquy concerning Brandt's request to represent himself. Brandt answered the court's questions in a satisfactory manner, and the court found "a knowing, voluntary, and intelligent waiver of the right to counsel."

At a CrR 3.5 hearing held on November 18, 2016, Brandt agreed with the State that his statements to the deputy who arrested him were admissible. Brandt testified that he had gone to the Lynnwood residence to wait for his daughter because he felt sick and hungry and thought some of his property might be stored there. He told the court that he intended to testify at the trial. Up to this point, nothing in the recorded proceedings indicated a mental impairment.

---

[1] Brandt made many unsuccessful attempts to obtain review in the cases from this era of his life. See Brandt v. Maleng, 130 Wn.2d 1013, 928 P.2d 412 (1996) (petition for review denied); Brandt v. Maleng, 133 Wn.2d 1008, 943 P.2d 663 (1997) (petition for review denied); Brandt v. Maleng, 145 F.3d 1336 (9th Cir. 1998) (affirming district court's dismissal); Brandt v. Maleng, 525 U.S. 871, 119 S. Ct. 167, 142 L. Ed. 2d 137 (1998) (denial of certiorari); Brandt v. Maleng, 525 U.S. 1049, 119 S. Ct. 609, 142 L. Ed. 2d 549 (1998) (petition for rehearing denied); Brandt v. Orthopedic Consultants of Wash., Inc., 137 Wn.2d 1013, 978 P.2d 1099 (1999) (petition for review dismissed); Brandt v. Orthopedics Consultants of Wash., 525 U.S. 1019, 119 S. Ct. 545, 142 L. Ed. 2d 453 (1998) (denial of certiorari); Brandt v. Orthopedics Consultants of Wash., 525 U.S. 1095, 119 S. Ct. 856, 142 L. Ed. 2d 709 (1999) (denial of rehearing).

The only oddity was Brandt asking the deputy on cross-examination if he owned any penny stocks. The court sustained a relevance objection to this question.

On November 21, 2016, the court granted Brandt's motion to appoint standby counsel. Standby counsel was present throughout trial and sentencing.

A delusional theme emerged when Brandt submitted a two-page trial brief. In the brief, Brandt asserted that he expected to show through cross-examination of the homeowner that she was "acting as an accomplice to a subterfuge devised by a devious federal agent (dubbed Dirty Trickster) in collusion with my Wall Street adversaries (Manipulators) in furtherance of a government Ponzi policy to 'stabilize,' i.e., manipulate the stock market." He claimed to be "the Acting Chair of Investors Liberation Movement which opposes fraud and manipulation on Wall Street." He alleged that the protection order for his daughter had been obtained through fraud and coercion evidenced by the forgery of her signature, and suggested that the prosecutor should call her as a rebuttal witness. He said he intended to call the prosecutor as a witness to inquire about his ownership of "valuable penny stocks."

Brandt's brief returned to his earlier explanation of his behavior when he said that he had been released from a homeless shelter where he got sick. He said he had gone to his daughter's home in part because he believed there were catheters there that he needed to deal with a long-standing urinary infection. He said he was glad the deputy rescued him by taking him back to jail, and he asked to be released unconditionally to his daughter's care.

4

The brief concluded, "If my convictions for intimidating a judge (actually the entire State judiciary) and leadership of the anti-war Revolutionary Army are allowed to impeach my testimony, I shall present lengthy justifications for those actions of which I am quite proud."

A short jury trial began on November 28, 2016. Before anyone testified, the judge advised Brandt that he did not plan to allow much, if any, testimony about penny stocks or a conspiracy surrounding the no-contact order. Asked about his defense theory, Brandt said he planned to argue as an affirmative defense that the attempted burglary charge was a "subterfuge devised by a devious federal agent," the Dirty Trickster. The judge informed Brandt that he would not be permitted to raise this theory as an affirmative defense. At the suggestion of standby counsel, Brandt then stated that he was entering a defense of general denial.

The prosecutor moved in limine for an order precluding Brandt from raising any issue related to his mental condition. Brandt insisted that he was competent and sane:

> [PROSECUTOR]: . . . I haven't been given any notice of diminished capacity or any kind of indication that the defendant suffer[s] from mental illness or condition. I guess I just ask the Court to instruct Mr. Brandt not to argue that, unless, I guess, previously authorized by the Court.
>
> MR. BRANDT: I'm mentally sane. I'm not incompetent or -- I'm mentally sound.
>
> THE COURT: All right. So I'll grant that motion. I -- there has been no defenses raised about competency or anything else.

Brandt unsuccessfully objected to the introduction of the no-contact order on the basis that it was fraudulent. The State called two witnesses, the arresting deputy and the homeowner. When the State rested, Brandt unsuccessfully moved to dismiss on the grounds that the government is involved in the manipulation of stock prices, the charges were politically motivated, and his daughter's signature on the protection order was forged.

Brandt called a single witness, himself. The court permitted him to expound briefly on his conspiracy theory and the alleged role of the Dirty Trickster in his legal predicament. He also testified that he did not know where his daughter was and that he believed she had been intimidated or coerced. The State cross-examined Brandt and elicited testimony from him confirming that he was aware of the no-contact order and nevertheless tried to enter what he believed was his daughter's home.

Brandt began his closing argument by stating his position was, "I don't want to leave the jail, except to the care of my daughter." He referred briefly to alleged fraud, government conspiracies, and penny stocks. He told the jury that he was prepared to stay in jail indefinitely because it would provide him with a place to stay. He testified that he had assumed his daughter still lived in the house, that he never represented a threat to the homeowner, that the federal agent known as the Dirty Trickster had told the homeowner not to answer the door to him, and that the same federal agent had interfered with his medical treatment. He claimed that his family owned "the major positions in all these penny stocks" that were owned by the deputy and the prosecutor.

Brandt concluded by telling the jury he was content with any decision they would make. The jury convicted Brandt as charged.

Brandt submitted a sentencing statement asserting that he did "absolutely nothing wrong ethically or morally" and that the abuse being committed against him by the Dirty Trickster "had become so tormenting that it amounted to an assassination attempt."

At sentencing on December 7, 2016, the prosecutor recommended a sentence of 9 months, the high end of the standard range. The prosecutor suggested that the court consider ordering a mental health evaluation as a community custody condition, even though he was not aware of authority permitting it. He said that while he believed Brandt was "competent to stand trial" and knew what he did was wrong, "I think it's apparent that there is a mental health issue at play here. . . . I believe that Mr. Brandt is in dire need of some kind of mental health evaluation, some kind of supervision." The prosecutor explained that he was recommending the high-end sentence because he believed Brandt was playing a game of trying to force his daughter to have contact with him notwithstanding the no-contact order:

> [PROSECUTOR]: And the reason I'm making the high-end recommendation, Your Honor, is that Mr. Brandt, I mean -- he was still wearing the jail bracelet from his latest release from custody when he went immediately back to this address when he was under the impression that his daughter was still residing there, knowing full well that by going there he would be violating an order. In 2013, he was convicted of -- charged with four and convicted of three no-contact order violations in south division by my office for doing the same thing.
> . . . .
> We knew we could prove the attempted residential burglary without her participation, and that was a tactical decision that we

7

made. But I said in closing, I'll say it again today, Mr. Brandt's entire game, the entire thought behind the series of crimes he's committing, is essentially to find ways to force contact in violation of this order, whether that means going straight to Ms. Brandt's home, or where he believed Ms. Brandt lived, or going pro se in a trial so that he has the opportunity to personally cross-examine her, if there's any excuse to get her added on to a witness list. And this pattern of harassment or attempted harassment justifies a sentence on the higher end of the standard range.

Brandt then was given an opportunity to be heard with respect to the sentence. He said he would "reject and not cooperate with any mental health evaluation." Brandt allowed standby counsel to speak for him to recommend a mid-to-low range sentence and to say that he was not asking for a stay of sentence pending appeal.

The court imposed a sentence of nine months, the high end of the standard range. The court did not attempt to fashion a sentence that would require any type of mental health evaluation. In response to Brandt's claim that he had done nothing wrong, the judge said, "You did something ethically and morally wrong. You terrified a young lady for no apparent reason." The judge told Brandt that the Dirty Trickster

has gotten into your head somehow and caused you to go down this Alice in Wonderland rabbit hole. It has no connection to reality or anything that you say about penny stocks or any of that nonsense. You're just simply wrong, and you need some mental help.

Brandt filed a notice of appeal. He indicated to standby counsel that he wanted to appeal pro se. With standby counsel's assistance, he obtained an order of indigency and authorization to proceed with an appeal at public expense.

He is represented by counsel on appeal.[2] With good time and credit for time served, Brandt completed his sentence in March 2017.

## ANALYSIS

Brandt contends that the trial court had reason to doubt his competency and erred by failing to order a professional evaluation. He asks this court to reverse his conviction and to "remand for a new trial, pending Brandt's competency."

The Fourteenth Amendment's due process clause prohibits the conviction of a person who is not competent to stand trial. Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). This due process principle extends to sentencing. "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050.

Under Washington law, when there is reason to doubt a defendant's competency, the trial court must arrange for a qualified professional to carry out an evaluation of the defendant's mental condition:

> Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

RCW 10.77.060(1)(a). The threshold determination of whether there is a reason to doubt competency is to be distinguished from an actual determination of

_____

[2] See Clerk's Papers at 1-11.

competency. City of Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741, review denied, 103 Wn.2d 1031 (1985). The factors a trial judge may consider in determining whether or not to order a formal inquiry into the competence of an accused include the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel. State v. Ortiz-Abrego, 187 Wn.2d 394, 404, 387 P.3d 638 (2017).

Here, the trial court did not consider, at least not on the record, whether there was any reason to doubt Brandt's competence. Brandt argues that once he began talking about penny stocks, government conspiracies and the role of the Dirty Trickster, it was apparent that there was reason to doubt his competence, and accordingly the trial court erred by failing to order a mental health evaluation under RCW 10.77.060(1)(a).

A criminal defendant is incompetent to stand trial if he or she "lacks the capacity to understand the nature of the proceedings . . . or to assist in his or her own defense as a result of mental disease of defect." RCW 10.77.010(15) (emphasis added); Ortiz-Abrego, 187 Wn.2d at 403. This is a two-part test. In re Fleming, 142 Wn.2d 853, 862, 16 P.3d 610 (2001). The record does reflect some reason to be concerned, especially about whether Brandt's persistent assertion of an implausible conspiracy theory undermined his capacity to assist in his own defense.

The State contends Brandt met the test for competency because he was generally able to understand and comply with court rules and instructions and he was able to cooperate with and follow the suggestions of standby counsel. The

State points out that no one, including standby counsel, raised any suggestion that he was incompetent.

The State cites In re Fleming for its holding that if the trial court receives no information regarding a defendant's competency, then the court does not abuse its discretion by not ordering an evaluation. In that case, medical professionals had examined the defendant and questioned his competency, but their evidence was never provided to the trial court, and the trial judge did not see any irrational behavior in the courtroom. In re Fleming, 142 Wn.2d at 863-64. However, the Supreme Court did grant relief from the conviction on the ground that the defendant's trial attorneys were ineffective. They did not raise the issue of competency nor did they move for a competency hearing before the defendant entered a guilty plea and was sentenced. In re Fleming, 142 Wn.2d at 867.

In exercising its discretion in determining the threshold question of whether there is reason to doubt a defendant's competency, a trial court will give considerable weight to the attorney's opinion regarding the defendant's competency and ability to assist in the defense. Gordon, 39 Wn. App. at 442. But in the present case, unlike in In re Fleming or Gordon, Brandt was not represented at trial. There was no attorney present with an obligation to protect his due process right not to be tried or sentenced while incompetent. If Brandt deserves to have his conviction reversed because a competency hearing was not sought, that relief cannot be provided on the ground of ineffective assistance of counsel as it was in In re Fleming.

11

Unlike In re Fleming, the trial judge did see irrational behavior in the courtroom. It is true that the colloquy about self-representation, which was conducted by a different judge, did not raise any concerns. But later, throughout voir dire, opening statements, cross-examination, direct testimony, closing argument, and sentencing, Brandt irrationally attributed his prosecution to the existence of a vast government conspiracy.

A defendant may appear competent at the beginning of a proceeding, but the trial court "must always be alert" to changes in the mental condition of the accused. Drope, 420 U.S. at 181. Ortiz-Abrego is a recent example of this principle. That case was "unusual" in that the contested hearing to determine if the defendant was competent to stand trial occurred after the trial itself. Ortiz-Abrego, 187 Wn.2d at 407. Here, the trial judge, at one point referring to the decision that Brandt had validly waived his right to counsel, characterized it as a "determination that this gentleman is competent and versed to represent himself," and stated that he did not intend to reopen that inquiry. But a decision permitting a defendant to represent himself is based on different criteria than a decision to inquire into competency, and we do not regard this comment as reflecting a deliberated choice that an inquiry into competency was unnecessary.

Some of the prosecutor's comments during the trial indicated his unease with the situation. The State does not dispute that Brandt's conspiracy theories were delusional. After the verdict, the prosecutor and the judge both expressed the belief that Brandt needed help with mental health issues. The prosecutor said he believed that Brandt was "in dire need of some kind of mental health

evaluation, some kind of supervision," even though he could not find authority for ordering an evaluation under the terms of the sentence he was asking the court to impose.

Whether there was reason to doubt Brandt's competence and order a professional evaluation is not an issue that we are presently in a position to decide. Needing a mental health evaluation is far from a conclusive indicator of incompetency. And possibly, as the prosecutor suggested at sentencing, Brandt consciously designed a ruse aimed at bringing him in contact with his daughter.

What is problematic, though, is the complete absence in the trial record of consideration of the possibility that Brandt needed a competency evaluation. It is not dispositive that Brandt insisted he was sane and competent, or that he objected to being compelled to undergo any type of mental evaluation. The law requires vigilance in the protection of the right of an accused not to be tried or sentenced when incompetent. When convictions have been affirmed on appeal against an argument that the trial court abused its discretion by failing to call for a competency evaluation, the record typically reflects that the issue of competency was raised at some point and considered by the court. See, e.g., Gordon, 39 Wn. App. at 438, 442-43. Here, it was not raised or considered. While a trial court has broad discretion in competency matters, our role is to review the trial court's decision for abuse of discretion. Here, there is no exercise of discretion that we can review. On the record presented to us, we are unwilling to affirm or reverse the conviction without a decision made by the trial court after weighing the pertinent factors.

13

The posture of the case is somewhat similar to the circumstances in State v. Chetty, 167 Wn. App. 432, 272 P.3d 918 (2012). There, the appellant filed a motion to extend time to file his criminal appeal. We determined the record was inadequate to allow us to determine whether to grant or deny the motion. We remanded to superior court for a reference hearing because the inquiry was so highly fact-specific. Chetty, 167 Wn. App. at 444-45.

Here, like in Chetty, a fact-specific inquiry is needed before we can properly determine whether Brandt's conviction should be affirmed or whether, as he contends, he is entitled to a new trial pending a determination of his competency. Accordingly, we remand for such further proceedings as the trial court may deem necessary. The court shall enter findings addressing, at a minimum, whether there was reason to doubt Brandt's competency at any point of the proceedings below.

A hearing on this matter shall be held within 90 days of the date this opinion is filed unless the superior court determines that additional time is needed to prepare for the hearing. In that event, the superior court may grant the parties additional time, provided the court or the parties advise this court of any delay and the reasons. Following the hearing, counsel shall promptly forward to this court copies of the written findings and conclusions together with the clerk's papers and transcripts of the hearing. Counsel may request permission to file supplemental briefing in this court. This court will then determine the proper disposition of Brandt's appeal.

On remand, the superior court shall also reconsider the no-contact order that barred Brandt from contacting the Lynnwood homeowner for 10 years. The State concedes the 10-year duration is error because it exceeds the 5-year statutory maximum for the crime. State v. Armendariz, 160 Wn.2d 106, 120, 156 P.3d 201 (2007).

## CONCLUSION

The record does not reflect that the trial court ever considered whether there was reason to doubt the appellant's competency. The relief requested by the appellant—reversal of his conviction—cannot be appropriately considered until that issue is resolved in the first instance in the trial court.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Becker, J.

WE CONCUR: