[No. 13578-3-I. Division One. January 7, 1985.]

THE CITY OF SEATTLE, *Respondent,* v. WILLIAM G. GORDON, *Petitioner.*

*George Yeannakis* of *Seattle–King County Public Defender Association,* for petitioner.

*Douglas N. Jewett, City Attorney,* and *Augustin Jimenez, Assistant,* for respondent.

CORBETT, C.J.—Defendant William G. Gordon appeals his judgment and sentence for menacing. We affirm.

Defendant was arrested on July 15, 1982, at a Seattle social security office and charged with menacing and criminal trespass in violation of the Seattle Municipal Code. He pleaded not guilty and demanded a jury trial. Three continuances were granted because of his poor health. The trial was finally scheduled for February 9, 1983. On the day of trial, his attorney moved, pursuant to RCW 10.77.060, to have the defendant's competency to stand trial determined. The attorney questioned whether the defendant was able to understand the possible consequences of conviction and whether the defendant had the capacity to effectively assist in preparing his defense. The city prosecutor objected on the ground that the issue of competency was not timely raised.

The judge conducted a colloquy with the defendant to

get a sense of his mental state.

THE COURT: Do you understand that if the jury found you guilty and your appeals were not successful that you could go to jail for the—

MR. GORDON: That's all right. They'll have to take care of me. I have a bad hip, I got a lot of things wrong with me. The economy will have to take care of me, Your Honor.

THE COURT: All right. You understand there may be fines as well, up to $500 on each charge?

MR. GORDON: That's all right. Doesn't make any difference to me. I've gotta die someday, Your Honor.

. . .

THE COURT: Would you tell me in your own words what menacing is, the charge of menacing.

MR. GORDON: Menacing covers anything under the law, Your Honor. Trespassing, as far as I'm concerned, that means the government breaks up there anybody it is allowed to come in there, just like I'm allowed to come in here. There's no such thing as trespassing. That ain't the law, that is true. But, if anybody comes on my property, you could call that trespassing too. I have the right to go up there to ask for my social security and they call it trespassing. That's wrong. I contest that darn law.

. . .

THE COURT: Where was it that they said you should not be, the government place?

MR. GORDON: At the social security office.

THE COURT: Oh, O.K. Now the other charge is menacing. Do you know what you were accused of doing to warrant a menacing charge?

MR. GORDON: As far as I'm concerned I was accused by a security officer of holding a gun, which I don't have any.

. . .

THE COURT: O.K. Mr. Levi is assigned to represent you. Have you been assisting him in his preparation of the case to represent you before the jury?

MR. GORDON: No, I got rid of him. I don't want him. I don't think he's capable of taking care of my, taking care of me. Him and I argued too much. He tells me that I can go along with everything. I can't go along with the system.

THE COURT: O.K. Who do you propose to have repre-

sent you today?

MR. GORDON: I'll do my own. If he wants to take it, all right, but I don't go along with what he says. I don't think he's qualified. I told him so last night. Just because he's passed the Bar Association don't make a man qualified to represent me. The only reason I went to him was because I was broke. I spend all my money when I run for politics.

. . .

MR. GORDON: Your Honor, I am willing to have him, but he wants to argue with me all the time. It isn't, I don't want to tell him what to do, but he tells me I can go along with the system. I don't go along with the system. I speak my peace [*sic*] and that's it. And he tells me I'm supposed to go along with everything. I won't do it. That's why him and I we disagree. Like last night. I told him last night if that's the way he feels about it, goodbye. If he wants to stay with it, I'm still willing, he wants to go along with it. I don't think that I should have to go along with what he tells me is what I'm supposed to do. He's trying to tell me I'm supposed to go along with everything.

THE COURT: O.K., Mr. Gordon—

MR. GORDON: I don't believe in that, Your Honor.

THE COURT: At this point Mr. Levi says that he is willing to represent you before the jury in your defense of charges. Are you willing to have him represent you at this point?

MR. GORDON: Your Honor—

THE COURT: If we call the jury in now, will Mr. Levi be your attorney and—

MR. GORDON: I'm not against Mr. Levi. I like him. We're all human beings and we belong to the human race, is the way I think. I've got nothing against him personally.

After deciding that the defendant understood the charges and consequences of conviction, was able to relate the facts, and was willing to have his attorney represent him, the judge believed that a competency evaluation and hearing were not necessary and denied the attorney's motion.

"'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or to assist in his own defense as a result of mental disease or

defect." RCW 10.77.010(6). It is fundamental that no incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as the incapacity continues. RCW 10.77.050. In order to protect an incompetent defendant, RCW 10.77.060(1) provides in part:

> Whenever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his competency, the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.

The procedures of the statute are mandatory and not merely directory. *State v. Wicklund,* 96 Wn.2d 798, 805, 638 P.2d 1241 (1982). Thus, once there is a reason to doubt a defendant's competency, the court must follow the statute to determine his or her competency to stand trial. The trial court was uncertain as to what standard to apply in deciding whether a competency hearing was necessary. "A reason to doubt" is not definitive, but vests a large measure of discretion in the trial judge. We cannot say, under the facts of this case, that she abused that discretion.

We distinguish the determination of a reason to doubt competency from an actual determination of competency. Before a determination of competency is required by RCW 10.77.060, the court must make the threshold determination that there is a reason to doubt competency. A motion to determine competency does not have to be granted merely because it has been filed, *United States v. McEachern,* 465 F.2d 833, 837 (5th Cir.), *cert. denied,* 409 U.S. 1043 (1972), and is not of itself sufficient to raise a doubt concerning competency. "[I]t would be a misuse of the statute to grant such motions 'so routinely that the statute amount[ed] to no more than a provision for an automatic continuation on the defendant's request.'" *United States v. Hall,* 523 F.2d 665, 667 (2d Cir. 1975) (quoting *United States v. Taylor,* 437 F.2d 371, 376 n.7 (4th Cir. 1971)). The motion must be

supported by a factual basis. The court will then inquire to verify the facts. In this process, the court's consideration will include the defendant's

1. Apparent understanding of the charge and consequences of conviction;

2. Apparent understanding of the facts giving rise to the charge; and

3. Ability to relate the facts to his attorney in order to help prepare the defense.

In exercising its discretion in determining the threshold question, the court should give considerable weight to the attorney's opinion regarding a client's competency and ability to assist in the defense. *See State v. Crenshaw,* 27 Wn. App. 326, 331, 617 P.2d 1041 (1980), *aff'd,* 98 Wn.2d 789, 659 P.2d 488 (1983). As stated by the Supreme Court:

Although we do not, of course, suggest that courts must accept without question a lawyer's representations concerning the competence of his client, . . . an expressed doubt in that regard by one with "the closest contact with the defendant," . . . is unquestionably a factor which should be considered.

*Drope v. Missouri,* 420 U.S. 162, 177 n.13, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975).

The attorney representing the defendant in this case did not file an affidavit in support of the motion and presented little more than a cursory opinion concerning his client's competence. Nearly 7 months had passed between the arrest and trial. The attorney had conferred with the defendant many times and had made other appearances before the court in the case. By delaying the motion until the day of the trial, it made it appear to be more of a trial tactic than an indication of real concern as to the defendant's competency.

In addition, after the court questioned the defendant, it was apparent that he understood the charges against him and their consequences. He also was willing to have his attorney continue representation. The attorney's statement concerning the defendant's ability to assist in preparing his

defense may have suggested that the defendant was incompetent, but the statement was unsupported by sufficient facts to cause a reason to doubt. The trial court did not abuse its discretion by denying the motion to determine competency.

Affirmed.

SWANSON and WILLIAMS, JJ., concur.

Review denied by Supreme Court April 17, 1985.