**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 79226-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RAMON SAUL SILVA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Ramon Silva appeals his convictions for second degree domestic violence (DV) assault and fourth degree DV assault. Silva contends that the court erred by not sua sponte requiring him to undergo a competency evaluation, and that his counsel was ineffective by not raising Silva's competency with the court. We disagree and affirm.

I.

Silva was arrested and charged with second degree DV assault, and fourth degree DV assault. According to the charging documents, the second degree assault charge arose from an incident on January 2, 2018, when Silva accused his live-in girlfriend, Victoria Martinez, of cheating on him. Martinez stated that Silva bent her fingers and strangled her. The fourth degree assault charge arose from an incident on

Citations and pin cites are based on the Westlaw online version of the cited material.

February 18, 2018, when Silva woke Martinez up and told her that he was having a mental breakdown. Martinez called 911 and reported that Silva had strangled her, and poked her in the eye after ranting, making no sense, and instructing her "don't look at me with those eyes." King County Sherriff Officers Tim MacDonald and Nathan Obregon responded. Martinez reported to the officers that Silva is schizophrenic, but he was not taking his medication and he was using marijuana, which aggravated his delusions. Martinez reported that Silva was talking about aliens and mind control. Deputy MacDonald observed Silva speaking about these issues and having an "obvious" mental health crisis.

On August 1, 2018, Silva's appointed counsel moved to withdraw due to a conflict of interest that arose after the State disclosed its list of possible witnesses. Counsel also informed the trial court that Silva wished to proceed pro se. The trial court granted defense counsel's motion to withdraw, and denied Silva's motion without prejudice, stating that it wanted to give Silva the opportunity to discuss representing himself with a new counsel.

On August 3, 2018, Silva appeared in front of a new trial court judge for a hearing on his motion to proceed pro se. A new public defender was assigned to Silva that morning. Counsel moved to continue the trial and confirmed that Silva wished to proceed pro se. The court asked Silva whether he previously represented himself and whether he had studied law. Silva responded that he had studied law as an inmate. He stated he was familiar with the rules of evidence and jury instructions, and that he was planning to waive a jury trial and proceed to a bench trial. The prosecutor raised a concern about whether Silva could "constitutionally proceed based on mental capacity."

The court responded "you can be incompetent and proceed pro se. There's U.S. Supreme Court law on that . . . So I'm going to let him proceed pro se. He wants to represent himself, he's entitled to do that." After a break in proceedings, Silva asked for standby counsel, which the court denied. Silva then asked the court if the prosecutor had raised a competency issue. The court responded, "I'm not here to discuss competency. We're just talking about you proceeding representing yourself."

The hearing resumed later that same day with another new trial court judge presiding. Silva remarked on the change of judge, saying "I'm just making sure I didn't wake up." Due to the confusion of where the prior judge had left off, the new judge restarted the proceedings from the beginning. When the court asked why Silva thought he could represent himself, Silva responded "I have a good understanding of the Criminal Rules and Procedure and with pro se status, I'll be able to utilize the WestLaw Legal Research station in the jail." He confirmed that even though he wanted standby counsel, he would still opt to proceed pro se if he was not granted standby counsel. After questioning Silva further about his knowledge of the legal system, the court found that he was making a knowing, intelligent, and voluntary waiver of his right to counsel. The court found that because there was no reason to doubt Silva's competency, the court would allow him to represent himself.

Silva then stated:

I would just like to mention for the record that I'm being held in a psychiatric ward past the 72-hour observation period and nobody has spoken to me or anything. And earlier with the other Judge that was up here, the Prosecutor mentioned something about incompetency and when I brought it up, nobody wanted to speak about it.
So I don't know what you can do about this, but this jail has me being—they're violating RCW 10.99 by even holding me past the 72-hour observation period without any type of anything. They haven't come

3

spoken to me, they don't do anything. They haven't—they're not even feeding me food or giving me showers.

The court responded "so if you have issues about what's going on in the jail, that is not something I can address." The court then signed Silva's waiver of counsel.

Although Silva initially stated an intention to plead guilty, on October 5, 2018, he indicated that he wanted to proceed to a bench trial. Trial began on October 17, 2018. The State presented trial testimony from Martinez, the responding Deputies MacDonald and Obregon, and Detective Eric White. The State also offered the 911 calls made by Silva and Martinez during the February 18 incident. Silva did not present evidence in his defense.

MacDonald testified that when he responded to the call, Silva "seemed to be having some sort of a mental health crisis. He was talking about mind control, aliens, people talking to him, and was just very strange." Obregon testified that based on his training as a psychotherapist, he was concerned that Silva might be experiencing disassociation.

Martinez testified that Silva had mental health issues, and that he stopped his treatment and was using marijuana, which made his paranoia worse. She said he frequently talked about CIA agents and being recorded. In the 911 call, Martinez said that Silva was describing himself as having a psychotic break at the time of the incident and that he was constantly talking about being an alien and a reptile.

Silva's defense was to challenge Martinez's credibility and motives. The court found Martinez was a credible witness and that Silva suffered from mental illness. The court found Silva guilty of both charges. At sentencing, Silva was irate and he made death threats, swore, and ranted. He demanded standby counsel before the court

signed the judgment and sentence. At a second sentencing hearing a week later, Silva had appointed standby counsel.

Silva appeals.

## II.

Silva argues that the trial court violated his constitutional rights by allowing him to proceed pro se through trial without ordering a competency evaluation sua sponte. We disagree.

The due process clause of the Fourteenth Amendment "prohibits the conviction of a person who is not competent to stand trial." In re Pers. Restraint of Fleming, 142 Wn.2d 853, 861, 16 P.3d 610 (2001) (citing Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)); U.S. Const., Amend. XIV. Washington law provides greater protection than federal law by specifying that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Fleming, 142 Wn.2d at 862; RCW 10.77.050. The Washington test for competency is whether (1) the defendant understands the charges against him and (2) the defendant is capable of assisting in his defense. Fleming, 142 Wn.2d at 861.

The trial court has wide discretion in judging the mental capacity of a defendant to stand trial and in deciding whether a competency evaluation should be ordered. Fleming, 142 Wn.2d at 863. RCW 10.77.060 provides that when there is a reason to doubt the defendant's competency, the court shall move to evaluate the competency of the defendant. The court must make the threshold determination that there is a reason to doubt competency before it is required to evaluate the defendant's competency. City

of Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741 (1985). A reason to doubt the competency of the defendant rests in the discretion in the trial judge. City of Gordon, 39 Wn. App. at 441. When making this determination, the court may consider the "defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." State v. Ortiz-Abrego, 187 Wn.2d 394, 404, 387 P.3d 638 (2017).

We defer to the trial court's judgment of a defendant's mental competency on review and will only reverse upon a finding of abuse of discretion. State v. Coley, 180 Wn.2d 543, 551, 326 P.3d 702 (2014).

In Fleming, for example, the defendant had a psychological evaluation that said he was incompetent and unable to cooperate with counsel, but the court was not provided with this evaluation before entering the defendant's guilty plea. Fleming, 142 Wn.2d at 863. The Supreme Court found that the trial court did not err by not ordering a competency evaluation because there was no irrational behavior or conduct by the defendant to alert the trial court that a competency hearing was necessary. Fleming, 142 Wn.2d at 865. The Court held that the defendant's potential incompetency affected his ability to enter a guilty plea, and that the defendant's counsel was ineffective because counsel failed to provide the court with the psychological evaluation. Fleming, 142 Wn.2d at 865-67.

Silva contends that the court abused its discretion because it was confronted with "multiple reasons to doubt Silva's competency" as raised by the prosecutor, Silva, and the certification of probable cause. Silva argues that the court was first put on notice about his incompetency when the prosecutor stated that she had concerns, and

directed the court to the officer statement in the certification of probable cause—which detailed Silva's schizophrenia diagnosis, his delusions, his irrational behaviors, and his beliefs. Silva argues that when he asked about a competency issue at the August 3, 2018, hearing about proceeding pro se, the court should have addressed his competency. He contends that defense counsel's evaluation of competency that day was not reliable because his new counsel had only been appointed to his case that morning and therefore was not familiar with Silva's mental state. He also argues that his reference to time in the psychiatric ward also put the court on notice. Silva claims that the testimony about his mental health and delusions at trial was yet another indication of his lack of competency. Finally, he argues that his erratic behavior at sentencing demonstrated that his competency was in question.

The record supports the State's argument that there was no reason to doubt Silva's competency throughout proceedings. Because the trial court had no reason to doubt Silva's competence, it did not abuse its discretion by not ordering a competency evaluation. Although Silva indisputably has mental health issues, the record does not indicate that these issues rose to the level of incompetency. Nothing about Silva's appearance, conduct, or demeanor gave the trial court reason to doubt Silva's competency. Silva was able to represent himself through trial successfully and make a proficient argument in his defense. Silva's reliance on the facts of the incidents that led to his charges is ultimately unpersuasive because these facts are not demonstrative of his conduct at trial. At the time of the incidents, Silva was off his medications, using marijuana, and undergoing a self-described psychotic break. By the time that Silva began court proceedings, he gave no signs nor exhibited any behaviors to questions his

7

ability to understand the proceedings or ability to represent himself.  Similarly to Fleming, Silva exhibited no irrational behavior or conduct that would alert the court that a competency hearing was necessary.  Because there was no reason to doubt Silva's competence, the trial court did not abuse its discretion.[1]

III.

Silva also argues that his counsel was constitutionally ineffective for failing to raise the issue of competency.  To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  Fleming, 142 Wn.2d at 865.  Silva analogizes his case to Fleming.  In Fleming, the court found that the defendant's lawyers where ineffective because none of them raised the issue of the defendant's competency, even though they knew there was an expert report that said the defendant was incompetent.  Fleming, 142 Wn.2d 853 at 867.  Defense counsel claimed that this was a trial tactic, however, the court held that counsel's failure to raise competency was unreasonable.  Fleming, 142 Wn.2d 853 at 867.

Unlike in Fleming, nothing in the record before us supports that defense counsel was in possession of expert reports or other evidence indicating Silva was not competent.  Silva fails to demonstrate that his counsel's performance was deficient.

---

[1] In his statement of additional grounds, Silva makes several claims that are not persuasive. Silva argues that Martinez's recorded statement was not provided to him until halfway through trial.  It appears that Silva and the prosecutor agreed to admit part of Martinez's statement through Detective MacDonald's testimony, therefore, there was no discovery violation.  Silva argued that his right to speedy trial was violated under CrR 3.3.  Silva asked for and was granted a continuance on August 3, 2018. Silva signed the continuance order.  Silva also argues that he was not provided the date of trial.  Silva was provided the date of October 15, 2018 at the August 3, 2018, hearing.  After additional continuances, Silva was notified that trial would begin on October 16 or 17, and trial did begin on October 17, 2018.

We affirm.

_Mann, C.J._

WE CONCUR:

_Brunner, J_          _Kelly, J_