IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 36894-7-III |
| | ) | |
| | ) | |
| A.G.G. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

LAWRENCE-BERREY, J. — R.G., mother to A.G.G. (A.G.), appeals after the trial

court terminated her parental rights. She argues (1) the trial court abused its discretion by

not applying a presumption of incompetency following a previous finding of

incompetency, (2) the trial court violated her right to due process by failing to obtain an

expert opinion of competency, and (3) the State presented insufficient evidence that it

offered the services she needed to reunify with her child and it tailored these services to

her cognitive needs. We disagree with her arguments and affirm.

FACTS

In February 2015, when A.G. was 10 years old, the Department of Children,

Families and Youth removed her from R.G., her mother. The removal occurred after a

long history of reports of domestic violence in the home between R.G. and the father of

one of her other children, illegal drug use, unstable housing, and neglect of the minor child. The Department also identified R.G.'s mental health condition as a source of concern. A.G. has an adjustment disorder.

In May 2015, R.G. agreed to a dependency. The dependency court ordered R.G. to engage in the following services: a psychological evaluation, mental health counseling, a chemical dependency evaluation, random urinalysis testing, a domestic violence assessment, and parenting education. Meanwhile, A.G. was placed out of the home. R.G. completed a chemical dependency evaluation at Okanogan Behavioral Health Care in January 2016. R.G. refused to submit to urinalysis testing and refused to participate in domestic violence services and parenting education.

R.G. was diagnosed with posttraumatic stress disorder (PTSD). The trial court ordered R.G. to attend cognitive behavioral therapy, which teaches coping skills and may ultimately change problematic behaviors. R.G. quit attending after two sessions and before therapy started.

In April 2016, the Department referred R.G. to Dr. Catherine MacLennan for a psychological evaluation with a parenting component. Alicia Tonasket, the social worker assigned by the Department to the case, attempted multiple times to schedule the evaluation but R.G. did not cooperate. Ultimately, R.G. was evaluated in August 2016.

Testing revealed no intelligence concern that interfered with R.G.'s ability to learn and function in services or understand the legal proceedings. However, R.G. refused to answer many questions, talked about tangential issues, became irritable, quit before the evaluation was concluded, and refused to complete the evaluation.

Dr. MacLennan diagnosed R.G. with PTSD, cognitive disorder not otherwise specified, and traits of borderline personality disorder. The cognitive disorder was unrelated to intelligence, but instead was possibly related to a traumatic brain injury, which R.G. reported resulted from a car accident years earlier.

Dr. MacLennan determined that R.G. was unable to parent and believed this inability was not likely to change due to R.G.'s unwillingness to engage in services, her lack of empathy toward A.G., and her lack of insight into how her functioning negatively affects A.G. Dr. MacLennan noted that a neuropsychological evaluation might clarify what was causing R.G.'s cognitive problems, but doubted R.G. would appear for or cooperate with the more intensive testing required for such an evaluation.

Both Ms. Tonasket and A.G.'s guardian ad litem (GAL) experienced R.G.'s odd communication style. She sometimes responded to questions by rambling about unrelated subjects or making bizarre claims without allowing the listener to speak or comment. Nevertheless, both Ms. Tonasket and A.G.'s GAL believed R.G. understood things

3

because she was able to answer questions about the services she engaged in or that were required, and understood what was happening vis-à-vis the termination proceedings.

In November 2016, at the request of R.G.'s then-attorney and with the agreement of the Department, the trial court entered an order finding, "the mother cannot comprehend the significance of these legal proceedings and their effect on her best interests and should be appointed a guardian ad litem." Clerk's Papers at 278. R.G. was not present for the hearing. The court ordered the GAL to prepare a report as to R.G.'s continued need for a GAL.

The first termination trial was scheduled for December 2017. R.G. failed to appear for trial. R.G.'s GAL filed a report at the start of trial, which noted he had been unable to contact R.G. to determine whether she needed a GAL. R.G.'s new trial attorney reported, "I don't have competency concerns for [R.G.]. And I've met with her on several occasions. That's my position on that." Report of Proceedings (RP) (Dec. 13, 2017) at 9. The trial court then dismissed the GAL from further proceedings with the agreement of both parties. At the conclusion of trial, the court found that the Department had met its burden under RCW 13.34.180 and terminated R.G.'s parental rights to A.G.

4

In January 2019, the Department agreed to set aside the termination order based on concerns involving the GAL's appointment and subsequent dismissal without a competency hearing. Following this, the trial court scheduled a second termination trial.

On February 7, 2019, the trial court held a status/competency hearing. The court considered documents, including psychologist Dr. MacLennan's August 2016 evaluation of R.G., and asked R.G. questions. During most of the hearing, R.G. was argumentative, repeatedly wondered aloud where her child was, and seldom answered the court's questions. However, R.G. said she understood that the Department removed A.G. because of domestic violence in the home and because the Department believed she was not a competent mother. She explained the Department was seeking to terminate her parental rights, disagreed she was an unfit mother, and wanted a trial so she could have her witnesses testify. She also said she could help her attorney identify witnesses and provide documents to prove her case.

R.G.'s new attorney also opposed appointment of a GAL. When asked by the court if there was a need for a GAL, R.G.'s new attorney said there was no need for a GAL and that R.G. "understands the process and the rules involved in this proceeding probably better than any client I've ever had in a dependency case." RP (Feb. 7, 2019) at 26.

The trial court, referring to chapter 4.08 RCW, noted that an adult is presumed competent. It found there to be insufficient evidence to overcome the presumption of competency and declined to appoint a GAL.

The trial court set the second termination trial for May 28, 2019. At the second trial, A.G.'s GAL supported termination of parental rights. Dr. MacLennan testified that R.G's unwillingness to attend services was extremely unlikely to change and, even if she was to completely engage in services, it would be years before she would be a fit parent. After hearing the evidence, some of which is set forth above, the trial court terminated R.G.'s parental rights to A.G.

R.G. timely appealed the termination order.

## ANALYSIS

A.    R.G.'S COMPETENCY

R.G. contends the trial court applied the wrong legal standard in finding her competent and that it abused its discretion by not appointing a GAL. She argues the trial court should have applied a presumption of incompetence due to her previously being found incompetent.

### 1.      *Legal standard*

R.G. contends the trial erred by not presuming her incompetent after it found her incompetent in November 2016.  R.G. cites *Shelley v. Elfstrom*, 13 Wn. App. 887, 538 P.2d 149 (1975).  There, the *Shelley* court ruled that a party who had previously been adjudicated incompetent was presumed incompetent unless the presumption was rebutted. *Id.* at 889.  This presumption arises because of collateral estoppel.  *See In re Higdon*, 30 Wn.2d 546, 192 P.2d 744 (1948).

For collateral estoppel to apply, the issue must have actually been litigated and necessarily determined.  *Energy Nw. v. Hartje*, 148 Wn. App. 454, 465, 199 P.3d 1043 (2009).  The November 2016 order appointing a GAL declared R.G. incompetent, but it did not result from the issue of competency being litigated.  Rather, R.G.'s attorney requested the court to enter the order.

Moreover, the finding was always subject to being withdrawn at R.G.'s request. R.G. did not agree to the finding of incompetency.  In fact, R.G. was absent from court when her attorney, without her consent, asked the trial court to find R.G. incompetent.  It is evident from the record that R.G. did not wish to be declared incompetent and that she wished to keep control of her own case.  An attorney may not waive a substantive right without the client's consent.  *In re Welfare of H.Q.*, 182 Wn. App. 541, 553-54, 330 P.3d

7

195 (2014). Because the finding of incompetency was never litigated and was always susceptible to being withdrawn at R.G.'s request, the trial court did not err in presuming R.G. competent.

2.      *Determination of competency*

This court reviews a trial court's determination of competency for abuse of discretion. *State v. Lawrence*, 166 Wn. App. 378, 385, 271 P.3d 280 (2012). We find abuse of discretion if the trial court's decision is based on untenable grounds or was decided for untenable reasons. *Id.* This includes where the trial court applies an incorrect legal standard. *Id.* at 386.

Generally, litigants are presumed competent and able to make decisions about their case. *Tai Vinh Vo v. Le Ngoc Pham*, 81 Wn. App. 781, 784-85, 916 P.2d 462 (1996). Despite this, the trial court has a duty to protect the interests of a party who appears to be incompetent. *Id.* at 785. A trial court must hold a competency hearing and appoint a GAL if it decides a litigant is incompetent. *In re Marriage of Blakely*, 111 Wn. App. 351, 353, 44 P.3d 924 (2002).

Citing *Vo*, R.G. argues the trial court applied the wrong legal standard because it did not look to whether she could "understandingly and intelligently" understand the

proceedings as well as "the effect and relationship of such proceedings in terms of [her] best interests." 81 Wn. App. at 784-85. We disagree.

During the hearing, R.G. usually failed to directly answer the court's questions. But on those rare occasions when R.G. focused on a question, she showed she understood the proceedings, the roles of those involved, and why the Department was seeking to terminate her rights to A.G. Further, R.G.'s attorney affirmatively told the court a GAL was not needed and that R.G. understood the proceedings probably better than any client she ever had. Trial courts typically give considerable weight to a party's attorney in determining competency. *City of Seattle v. Gordon*, 39 Wn. App. 437, 442, 693 P.2d 741 (1985). We conclude the trial court did not abuse its discretion in finding R.G. competent and not appointing a GAL.

B.      DUE PROCESS RIGHTS

R.G. contends the trial court violated her due process rights by not obtaining an expert to testify about her competency before making a finding that she was competent. This claim of error was not raised at trial.

In general, this court reviews only claims of error that were raised at trial. RAP 2.5(a). An exception to this rule allows review of claims of manifest error affecting a constitutional right. RAP 2.5(a)(3).

An error is manifest if there is actual prejudice—meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences at trial. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). To determine whether this standard is met, "the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *State v. O'Hara*, 167 Wn.2d 91, 100, 217 P.3d 756 (2009). "If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest." *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012).

R.G. does not meet the manifest error standard because, as explained below, the trial court had no reason to appoint an expert to determine R.G.'s competency.

Dr. MacLennan's psychological evaluation of R.G. revealed she had the ability to function in services and understand legal proceedings. Both R.G.'s social worker and A.G.'s GAL reported R.G. understood the termination proceedings and what she was required to do. R.G.'s own attorney advised the trial court there was no basis for a GAL and that R.G. understood the proceedings probably better than any client she ever had. All this confirms the trial court's finding that R.G. was competent. Based on what the

trial court knew at the time, it had no reason to appoint an expert to determine R.G.'s

competence.

        C.      SUFFICIENCY OF THE EVIDENCE

R.G. contends the trial court's decision was not based on substantial evidence. She

argues the Department did not offer her a meaningful opportunity to undergo a

neuropsychological examination and failed to tailor its services offered to her. We

disagree.

An order terminating parental rights must be supported by clear, cogent, and

convincing evidence. *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 478, 379 P.3d 75

(2016). To satisfy this standard, a trial court must determine that the ultimate fact at issue

is shown to be "'highly probable.'" *Id.* at 478 (internal quotation marks omitted)

(quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). This court

reviews the trial court's decision on the basis of substantial evidence and will not judge

the credibility of the witnesses in our review. *Id.* at 477.

Among the facts that must be shown during a termination hearing, the State must

show, "[t]hat the services ordered under RCW 13.34.136 have been expressly and

understandably offered or provided and all necessary services, reasonably available,

capable of correcting the parental deficiencies within the foreseeable future have been

expressly and understandably offered or provided." RCW 13.34.180(1)(d). Where the record establishes any offered services would be futile, the trial court may find the Department offered all reasonable services. *In re Parental Rights to B.P.*, 186 Wn.2d 292, 297, 376 P.3d 350 (2016). This "derives from cases in which the State made repeated offers of services but eventually gave up after the parent refused to accept any of those offers." *Id.* at 316 n.5.

R.G. argues the Department did not offer or provide her with a neuropsychological examination. She correctly notes the Department did, in fact, offer an evaluation, but contends by the time it was offered, she no longer was in contact with her psychologist and could not have taken advantage of it. However, substantial evidence shows that R.G. had been offered a number of services before this and refused to attend many of them. In fact, R.G. refused for a long time to have a psychological evaluation, left before the evaluation concluded, and refused to complete it. Because R.G. was unwilling to take advantage of or complete these services, the Department was not required to provide additional services. *K.M.M.*, 186 Wn.2d at 485-86. The evidence that R.G. refused a number of services along with Dr. MacLennan's testimony that she was not likely to change was sufficient to support the trial court's finding that further offers of services would be futile.

12

R.G. also argues that the Department failed to tailor its services around her cognitive needs. Services offered must be tailored to meet an individual parent's needs. *In re Dependency of T.R.*, 108 Wn. App. 149, 161, 29 P.3d 1275 (2001). As part of this requirement, the Department must ensure providers are informed of the parent's needs. *In re Parental Rights to I.M.-M.*, 196 Wn. App. 914, 922, 385 P.3d 268 (2016). R.G. contends that, as in *I.M.-M.*, the therapist who worked with her was uninformed of her cognitive issues that interfered with the services she was given.

However, R.G. fails to show how services would have been improved where she refused to engage in many of the services offered. In *I.M.-M.*, the parent was consistently engaging with the services being offered. *Id.* at 919-20. The parent was not showing improvement and there was evidence this was because the therapist was not informed of the parent's particular issues. *Id.*

Unlike *I.M.-M.*, R.G. did not engage in services and there is no reason to believe she would have done so. She does not make a showing there was any negative effect stemming from the Department not informing one of her therapists of her cognitive issues.

No. 36894-7-III
*In re Parental Rights to A.G.G.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Korsmo, A.C.J.                                        Siddoway, J.