# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>RANDY SMITH | No. 88035-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In his personal restraint petition, Randy Smith challenges his convictions, contending there was a factual basis to question his competency to stand trial, and the trial court, defense counsel at both the trial and appellate level, and the prosecutor each erred by failing to either order a competency hearing or raise the issue. We conclude that Smith fails to establish a factual basis to question his competency to stand trial. Accordingly, we deny the petition.

I

We summarized the background facts of this case in Smith's direct appeal:

> In September 2018, armed with multiple firearms and over 200 rounds of ammunition, Smith exited a bus in the early evening and approached two Parkland businesses, Best Tire Center and Sky Motors, Inc. Initially entering Best Tire, Smith threatened assistant manager Matthew Brown, as well as several other persons, with a firearm. Smith demanded Brown's car keys. Brown told Smith he did not have his keys with him but that he would go and get them. At that point, Brown fled the business with the others to a nearby gas station. Left alone, Smith then apparently searched the business but did not take anything of value.

As law enforcement was arriving, Smith left Best Tire and walked to Sky Motors with his collection of firearms and ammunition. Smith entered Sky Motors and found three teenagers and one young adult inside. While the police were taking up defensive positions outside Sky Motors, Smith threatened the occupants with one of his firearms and demanded a vehicle. One of the individuals gave Smith keys to a car. After that, three of the four young individuals managed to flee. However, the fourth person, 16-year old M.A., was taken hostage by Smith. Smith then engaged in a shootout with police before eventually surrendering.

The State charged Smith with six counts of first degree assault, one count of first degree robbery, one count of attempted first degree robbery, one count of first degree kidnapping, and two counts of first degree unlawful possession of a firearm.

State v. Smith, No. 55329-5-II, slip op. at 2, (Wash. Ct. App. August 23, 2022) (footnote omitted) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2 55329-5-II Unpublished Opinion.pdf.

Before trial, defense counsel obtained an order appointing Dr. Jennifer Harris to examine Smith "in order to perform independent expert professional assistance for [Smith], pursuant to the provisions of RCW 10.77." Defense counsel did not disclose the results of Dr. Harris's evaluation to the State or to the court. However, Dr. Harris provided defense counsel a letter, in which she opined that "there was not convincing evidence for a plea of not guilty by reason of insanity [or] diminished capacity." In a separate letter, Dr. Harris diagnosed Smith with multiple mental health disorders, but still did not opine that Smith lacked capacity to stand trial or could make out a diminished capacity defense.

On June 4, 2019, Smith filed a pro se motion for a competency evaluation, stating that he suffered "from a long standing 'Mental Illness' that requires a competency hearing at Western State Hospital in the interest of justice." The

record does not reflect that the trial court ruled on this motion. However, the court sent a letter to Smith informing him that the trial court "does not act on ex-parte letters or improperly filed pleadings."

On July 11, 2019, Smith requested to proceed pro se. The following conversation occurred between Smith and the trial court:

> [SMITH]: Well, Your Honor, from my understanding, [defense counsel] is a FBI [Federal Bureau of Investigation] informant. I'm trying to realize or figure out as far as a conspiracy and everything that goes on in this courtroom. I have no idea why these charges were brought against myself. I am a FBI agent. These charges are outrageous. I don't know why I'm here today. I'm asking to be released on my personal recognizance.
>
> THE COURT: Well, the reason you're here today is you've made a request to represent yourself in the case.
>
> [SMITH]: Well, Your Honor, I don't dispute that. That was given by one of your agents. I'm here for a debriefing. Anything else is uncivil. I'm here for a debriefing, Your Honor.
>
> THE COURT: A debriefing of what?
>
> [SMITH]: As far as this conspiracy, this romper room, Your Honor.
>
> THE COURT: I don't know what you mean.
>
> [SMITH]: Huh?
>
> THE COURT: I don't know what you mean.
>
> [SMITH]: From your agents. You're part of the government, right? Can you point out to me or suggest to me how do I proceed as far as the debriefing?
>
> THE COURT: Do you understand you're looking at a third strike, which would be a sentence of life in prison without the possibility of parole?
>
> [SMITH]: Your Honor, I have no idea about any of this, but I have an idea as far as my involvement—
>
> THE COURT: All right.

The trial court denied Smith's request because it did not believe it to be knowingly or unequivocally made.

Smith sent the trial court a letter discussing his perceptions from the previous hearing:

Dear honorable Judge:

It was a delight to start or begin the prophecy. As you are aware of the conspiracy and the co-[con]spirators along with romper room. I will need all local/international information in regards of the investigation. I have made formal and informal contact with the agency. [Defense counsel] is double agent he cannot be trusted in any regard to the conspiracy. However [the prosecutor] is not from our plan[e]tary system proceed with extreme caution. I have a duty/protocol to gather all important intel in regards of all unknown life forms in this sector. I have encountered several deadly life forms in this sector. "Agent Sly" and myself find this troubling. I'm a high ranking agent authorized by the government (F.B.I.). My life as well as yours could be in danger. I need authorization or clearance from my superior officers to fulfill the prophecies.

(Some capitalization altered.) Smith filed another letter with the trial court addressed to "Demon Death" and referred to "dead souls," "the romper room," and "dead bodies." (Some capitalization altered.)

On August 19, 2019, Smith again moved to proceed pro se, and told the trial court that he wished to exercise his Sixth Amendment right to self-representation. When the trial court asked why, Smith responded that he felt he would receive the best results if he represented himself. After a lengthy colloquy, the judge found that while Smith's request may be voluntary, she did not believe it was knowingly and intelligently made. The trial court denied Smith's request to proceed pro se.

In a November 2019 hearing, defense counsel stated, "[Smith] has portrayed himself as mentally ill to the Court on several occasions in a way that was extreme and not credible. He has accused me of being racist. He filed a bar

4

complaint. Unfounded." Defense counsel explained that he did not believe Smith believed what he was alleging, but that Smith was simply frustrated with the process. In an April 2020 hearing, in which the parties discussed whether Smith's conduct had waived his right to counsel, defense counsel stated that Smith's prior requests to represent himself were denied because "frankly [Smith], at that juncture, was feigning mental health issues and feigning that—that he was not of sound mind, which was quite obvious that that was not reality, that he does have sound mind." The State agreed that Smith's behavior "has been manipulation from the beginning."

On October 20, 2020, Smith again requested to proceed pro se. The judge stated he had "yet to hear a legal basis that would require that [Smith] be allowed to proceed pro se," denied Smith's request, and found that it was not made knowingly, intelligently, or voluntarily.

Following trial in November 2020, the jury found Smith guilty on each of the lesser-included assault in the second degree charges, and found him guilty of the remaining charges. Based on Smith's criminal history, the trial court found that Smith qualified as a persistent offender under Washington's Persistent Offender Accountability Act, RCW 9.94A.030(37), .570. The trial court sentenced Smith to life in prison without the possibility of release.

Smith appealed, arguing among other thing that he was denied his right to self-representation. Smith, No. 55329-5-II, slip op. at 1. In rejecting Smith's claim, we cited Smith's "delusional answers" during the July 2019 colloquy and noted that the trial court's order denying Smith's motion reflected those considerations. Id. at

5

14-16. In language that did not precisely track the trial court's ruling that Smith had not made a knowingly and intelligent waiver of the right to counsel, we concluded, "Smith clearly demonstrated a lack of mental capacity to conduct a defense at the July 2019 hearing." Id. at 14.[1]

Smith filed this timely personal restraint petition.

II

Smith argues the trial court abused its discretion by not ordering a competency examination because there was a factual basis to question his competency to stand trial. We disagree.

To prevail on a personal restraint petition alleging constitutional error for denial of a competency hearing, the petitioner must demonstrate unlawful restraint. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 861, 16 P.3d 610 (2001). Smith must show that he was entitled to, and denied, a competency hearing, and as a result, his convictions were "entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2). The burden of proof is a preponderance of the evidence. Fleming, 142 Wn.2d at 861. RCW 10.77.060(1)(b)(i)[2] requires the trial court to order a competency hearing whenever there is a reason to doubt competency. We review whether a trial court should have sua sponte ordered a competency evaluation for an abuse of discretion. State v. McCarthy, 193 Wn.2d 792, 802-03, 446 P.3d 167 (2019). A

---

[1] We vacated Smith's conviction for attempted robbery in the first degree based on the State's concession that there was insufficient evidence, and affirmed Smith's remaining convictions. Smith, No. 55329-5-II, slip op. at 1, 29.

[2] This section will be recodified per LAWS OF 2025, ch. 358, § 2.

court abuses its discretion if it bases its decision on untenable or unreasonable grounds. State v. Heddrick, 166 Wn.2d 898, 908, 215 P.3d 201 (2009).

The due process clause of the Fourteenth Amendment to the United States Constitution guarantees an accused the fundamental right not to stand trial if they are legally incompetent. McCarthy, 193 Wn.2d at 800. This principle is codified under RCW 10.77.050,[3] which states, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Under the statutory definition, " '[i]ncompetency' means a person lacks the capacity to understand the nature of the proceedings against [them] or to assist in [their] own defense as a result of mental disease or defect." McCarthy, 193 Wn.2d at 800 (one alteration in original) (quoting former RCW 10.77.010(15) (2019)). The constitutional standard for competency to stand trial is whether the accused has " 'sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding' " and to assist in their defense with " 'a rational as well as factual understanding of the proceedings against [them].' " Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (quoting Solicitor General Rankin for the United States). The factors a trial judge may consider to determine "whether or not to order a formal inquiry into the competence of an accused include the 'defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.' " Fleming, 142 Wn.2d at 863 (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

---

[3] This section will be recodified per LAWS OF 2025, ch. 358, § 2.

Citing Fleming and Godinez v. Moran, 509 U.S. 389, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993), Smith argues that the competency standard for waiving the right to counsel is the same as the competency standard for standing trial, and so when the Court of Appeals said that Smith was incompetent to waive his right to counsel, this also meant there was a fact question as to whether he was competent to stand trial. In Godinez, the Supreme Court rejected "the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the Dusky standard." 509 U.S. at 398. The Court noted there "*is* a " 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of *competence*." Id. at 401. This was because a finding that a defendant is competent to stand trial is not all that is necessary before they are permitted to plead guilty or waive their right to counsel—the trial court must also ensure that the waiver is knowing and voluntary. Id. at 400. Thus, "when a defendant seeks to waive [their] right to counsel, a determination that [they are] competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted." Id. at 401-02.

The Court offered further explanation later in Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). There, the Court considered whether a state may require that a defendant who is found mentally competent to stand trial must nevertheless proceed to trial with counsel, rather than be allowed to represent themselves. Id. at 167. The Court held that it is constitutionally permissible for a state to deny a defendant pro se status "on the ground that the

8

defendant lacks the mental capacity to conduct [their] trial defense" even though they were found competent to stand trial. Id. at 174. The Edwards Court observed that the standard to determine whether a defendant is competent to stand trial assumes they will assist in their defense, not conduct their defense, and therefore competency to stand trial does not automatically equate to a right to self-representation. Id. at 174-75.

Here, the trial court denied each of Smith's requests to represent himself, concluding the first request was not knowingly or unequivocally made, the second was not knowingly or intelligently made, and the final request was not made knowingly, intelligently, or voluntarily. In each of these rulings, the trial court did not decide or question Smith's competency to represent himself, but instead decided the " 'heightened' " standard that the waiver be knowing and voluntary. Godinez, 509 U.S. at 400-01. The trial court made no finding as to Smith's competency to either represent himself or to stand trial. Thus, the trial court's ruling does not create a fact question as to Smith's competency to stand trial.

Smith also points to the fact that defense counsel obtained a mental health evaluation, Smith himself filed a motion requesting a competency evaluation, and Smith's letters to the court and accusations against his trial court as evidence that there was at least a question to his competency, requiring an evaluation. As to the mental health evaluation, Dr. Harris was asked to determine whether Smith had a mental health defense and potential mitigation. Dr. Harris's contemporaneous evaluation in defense counsel's possession—but not the State's or the court's—did not suggest that she believed Smith to be incompetent. Furthermore, the trial

9

court should afford " 'considerable weight' " to a defense attorney's opinion regarding their client's competency. McCarthy, 193 Wn.2d at 801 (quoting State v. Lord, 117 Wn.2d 829, 901, 822 P.2d 177 (1991), abrogated on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018)). Defense counsel chose not to share the results of Smith's mental health evaluation with the court or the prosecutor, and in November 2019 expressed that Smith's comments were not genuine indications of incompetency. No additional suggestion of incompetency emerged in the next year before trial in November 2020, or thereafter. As to Smith's pro se motion requesting a competency evaluation, " '[a] motion to determine competency does not have to be granted merely because it has been filed, and is not of itself sufficient to raise a doubt concerning competency.' " Lord, 117 Wn.2d at 901 (citations omitted) (quoting Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741 (1985))

A contemporaneous mental health evaluation whose results were withheld from the State and the court brought up no question about Smith's competency, and other contemporaneous observers, including defense counsel, saw no question about competency and believed Smith's pro se suggestions of incompetency were feigned. Smith has not shown there is a fact question as to whether he was entitled to a competency evaluation. Thus, the trial court did not abuse its discretion in not ordering a competency evaluation.

III

Smith argues both his trial counsel and appellate counsel engaged in ineffective assistance because neither brought the issue of competency to the court's attention. We disagree.

Effective assistance of counsel is guaranteed by both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Mierz, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To demonstrate ineffective assistance of counsel, a defendant must show: "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We review a claim of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

The review of a claim of ineffective assistance of counsel begins with a strong presumption that counsel's representation was effective. In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). A "[p]etitioner can 'rebut this presumption by proving that [their] attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.' " Id. (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)). "The reasonableness of counsel's

performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman, 477 U.S. at 384. Here, because there was no factual question as to Smith's competency, Smith fails to show that his trial counsel's representation was deficient.

To demonstrate ineffective assistance of appellate counsel, a petitioner must demonstrate the merit of any legal issue that appellate counsel failed to raise, in addition to prejudice. In re Pers. Restraint of Salinas, 189 Wn.2d 747, 760, 408 P.3d 344 (2018). Thus, the petitioner must show a reasonable probability that, but for their counsel's unreasonable failure to raise a particular claim, they would have prevailed on appeal. In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 788, 100 P.3d 279 (2004). Because there was not a factual question as to Smith's competency to stand trial, Smith necessarily fails to demonstrate that this claim would have been meritorious on direct review.

IV

Smith argues the prosecutor engaged in prosecutorial misconduct in allowing his case to proceed to trial without requesting a competency hearing. We disagree.

To prevail on a prosecutorial misconduct claim, a defendant must demonstrate that a prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The facts here do not show that the prosecutor engaged in misconduct. Instead, the prosecutor held a good faith belief that Smith did not lack capacity and therefore did not require a

competency evaluation. Under these facts, the prosecutor's conduct was neither improper nor prejudicial.

Smith has not established that his convictions were entered in violation of the state or federal constitutions. Accordingly, the petition is denied.

_____Birk, J._____

WE CONCUR:

_____Díaz, J._____                _____Coburn, J._____